UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM BARNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:15CV23 CDP |
| | ) | |
| CITY OF CHARLACK, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiffs William Barnes and Jason Powell, former police officers for the City of Charlack, bring this action under 42 U.S.C. § 1983 claiming that the City's Board of Aldermen unlawfully terminated their employment in retaliation for exercising their First Amendment right to free speech. Defendants are the City of Charlack, Missouri ("City"); and Andre Morice, Gene Speed, David Illick, and Jared Gilbert, members of the City's Board of Aldermen ("Board"). Because plaintiffs' speech did not constitute protected speech under the First Amendment, defendants will be granted summary judgment.

## **Background**

Barnes was employed as a police officer with the City of Charlack from 2007 through the date of his termination, January 9, 2013. Powell was employed as a police officer with the City from 2009 through the date of his termination,

October 13, 2012.

In July 2012, Barnes and Powell each wrote a letter addressed to the City's mayor and Board of Aldermen criticizing the performance of the newly-named acting chief of police, Anthony Fanara. Barnes also provided testimony during a court hearing that was critical of Fanara. Plaintiffs claim that the speech contained in the letters and in Barnes' testimony caused the Board of Aldermen to terminate their employment. Defendants now move for summary judgment, arguing that this speech did not constitute protected speech under the First Amendment. The undisputed facts before the Court show defendants' argument to be well taken, and summary judgment will be granted.

## Summary Judgment Standard

When considering a motion for summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). As the moving parties, defendants must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving parties have met this burden, nonmoving parties may not rest on the allegations in their pleadings, but by affidavit or other evidence must set forth specific facts showing that a

genuine issue of material fact exists.   Fed. R. Civ. P. 56(e).

**Evidence Before the Court on the Motion**

In June 2012, Anthony Fanara became acting chief of the City's police department, replacing former chief Anthony Umbertino who had been terminated by the Board of Aldermen.   Upon Umbertino's termination, Mayor Frank Mattingly informed the Board that he intended to reappoint Umbertino as interim chief.   The City filed a motion for temporary restraining order in the Circuit Court of St. Louis County, seeking to prevent this action.

On or around July 10, 2012 – about two weeks after Fanara became acting chief – Barnes, Powell, and two other police officers wrote letters addressed to the City's mayor and Board of Aldermen.   Both Barnes' and Powell's letter stated as follows:

> This letter is a formal and official notice informing you that I, Officer [Powell/Barnes], who is listed in this letter, is pledging a "Vote of No Confidence" on Sgt. Tony Fanara.
>
> I feel strongly that I do not trust his knowledge, skills, and abilities as a supervisor or as the Acting Chief of Police as it relates to his supervision and management of police personnel (me).
>
> I also feel strongly that he uses his position in a manner that creates a hostile work environment through various forms of workplace harassment.   This negatively affects the morale of the police department as well as the performance of our duties.
>
> I am asking for relief from Mayor Mattingly who is his direct supervisor by taking action in relieving him of his supervisory

> abilities over me in any way that he sees to be just and appropriate and to appoint someone else to supervise me and manage the police department.
>
> In addition, I have also been made aware that he is under investigation by the Highway Patrol and feel that it is in the best interest of the City of Charlack and the Charlack Police Department that he be placed on administrative leave.

(ECF 27-2, 27-3; Defts. Exhs. A, B.) Barnes included an additional statement in his letter, stating that his lack of trust in Fanara's knowledge, skills, and abilities as acting chief "is a safety issue that affects the entire City of Charlack and me." (ECF 27-3, Defts. Exh. B.)

The letters from the four officers were placed in one envelope and Barnes personally delivered the envelope to the mayor. Barnes asked the mayor to share the letters with the Board of Aldermen, which he did. Barnes otherwise did not discuss the letters or their contents with the mayor or with anyone else. Likewise, Powell did not publicize the letters or the subject matter of their contents.

On July 31, 2012, Barnes provided testimony pursuant to subpoena at a circuit court hearing on the City's motion for temporary restraining order.[1] During the course of Barnes' testimony, Umbertino's attorney asked, "How are things different since he [Umbertino] is not acting as police chief?" In response, Barnes testified:

---

[1] Barnes testified at his deposition that he received the subpoena in his "box" a couple of days

> A. It's constantly in complete disarray. The reports aren't getting checked in. They're running the department totally different. I told them that they're micro-managing us. People are following us around the calls. I worked almost two months on nights by myself, and there were three guys during the day, and it was unsafe for myself and another officer of ours, also, who works by himself at night.
>
> Q. Okay. And the staffing problems, how is that a concern? You said it's unsafe. How is that unsafe?
>
> A. It's unsafe whenever you have three guys on days, and you need someone on at nights for a backup officer. There is no sense for three guys on during the day and you have only one of the guys switched to nights.
>
> . . .
>
> . . . Like, I worked the 4th of July, actually, by myself, and it was like cannons going off all around us.
>
> Q. . . . Do you think the department of your job would function better with Chief Umbertino than it does now?
>
> A. I do. I do. And not all of the calls that the board is getting in their packets are getting logged. Whenever we write down calls in the header, it's deciphered by the sergeant, who is now the interim chief, what calls the actual board members actually get. So the board members are not actually seeing all of the calls that we actually go to.

(ECF 27-4, Defts. Exh. C at pp. 2-4.) The City's attorney then asked Barnes, "Do you consider Mr. Umbertino to be a friend of yours?" Barnes testified in response:

> A. A friend, no, I would consider him a great boss. Everything that we've ever needed for our department, he would make sure that

---

after Umbertino's counsel told him he would get one. ECF 27-6, Barnes Depo. at p. 71.

> we had it. He would make sure that our paychecks were paid. He would make sure that our gas cards didn't get declined like they have several times.

(*Id.* at p. 6.) Other persons were present in the courtroom when Barnes testified, including the mayor and members of the Board. Other people unknown to Barnes were also present in the courtroom. Other than testifying in court, Barnes did not publicize the content of his testimony.

Within a month of this hearing, Barnes sustained an injury to his foot that caused him to be absent from work. A medical note dated August 29, 2012, stated that he could not return to duty for three months. Barnes never returned to work.

During a meeting on October 9, 2012, the Board voted to terminate Powell's employment with the City, citing Powell's recent failure to secure his weapon while playing kickball with neighborhood children and for violating department policy by recently giving a ride-along to the mayor. Powell's termination was effective October 13, 2012.

During a meeting on January 8, 2013, the Board voted to terminate Barnes' employment with the City, citing Barnes' lack of documentation to support his continued absence from work. Mayor Mattingly later shared with Barnes his opinion that Barnes' earlier "vote of no confidence" was a factor in the Board's determination.

**Discussion**

To establish their free speech retaliation claim, plaintiffs must prove 1) that their speech was protected by the First Amendment; 2) that their governmental employer terminated their employment; and 3) that their protected speech was a substantial or motivating factor in their employer's decision to terminate their employment. *Rynders v. Williams*, 650 F.3d 1188, 1194 (8th Cir. 2011); *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 865 (8th Cir. 2009) (citing *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007); *Cox v. Dardanelle Pub. Sch. Dist.*, 790 F.2d 668, 672-76 (8th Cir. 1986)). *See also Hughes v. Stottlemyre*, 506 F.3d 675, 678 (8th Cir. 2007) (establishing a *prima facie* case of retaliation under the First Amendment). If plaintiffs meet this burden, the burden then shifts to their employer to show that it would have taken the same action regardless of plaintiffs' speech activities. *McCullough*, 559 F.3d at 865 (citing *Altonen*, 487 F.3d at 559).

In their motion for summary judgment, defendants argue only that plaintiffs fail to meet the first prong of establishing their *prima facie* case, that is, that they engaged in protected speech. My discussion is therefore limited to this isolated issue.

The First Amendment guarantees every citizen a right to engage in free speech, without governmental restriction. *See Wickersham v. City of Columbia*,

481 F.3d 591, 597 (8th Cir. 2007). Because "public employees do not surrender all of their First Amendment rights by reason of their employment," a public employer may not penalize its employee for exercising his constitutionally protected right to freedom of speech. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also McGee v. Pub. Water Supply, Dist. #2 of Jefferson Cnty., Mo.*, 471 F.3d 918, 919 (8th Cir. 2006).

A public employee engages in speech protected under the First Amendment if he "spoke as a citizen on a matter of public concern." *Garcetti,* 547 U.S. at 418; *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 655 (8th Cir. 2007). This is a question of law for the Court and must be determined by the content, form, and context of a given statement, "as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 148, 148 n.7 (1983); *McGee,* 471 F.3d at 920. This determination, itself, is a two-step process by which I must consider, first, whether the employee spoke as a "citizen" and, second, whether the speech was on a matter of public concern. *Garcetti*, 547 U.S. at 421 (Supreme Court did not challenge circuit court's finding that speech addressed a matter of public concern, but determined that government employee did not act as a citizen when speech was made); *McGee*, 471 F.3d at 920-21 (matters about which government employee spoke were "obvious examples of matters that are of concern to the general public," but were made in the course of his employment duties and thus

not as a citizen). *See also Foley v. Town of Randolph*, 601 F. Supp. 2d 379, 383, 383 n.4 (D. Mass. 2009) (citing *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007); *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007); *Mills v. City of Evansville*, 452 F.3d 646, 647-48 (7th Cir. 2006)). If the employee fails to satisfy both of these prongs, he has no First Amendment cause of action based on his employer's reaction to the speech. *Garcetti*, 547 U.S. at 418. If, on the other hand, the employee demonstrates that he spoke as a citizen, "that is, outside the scope of employment[,]" on matters of public concern, the First Amendment offers protection if his speech survives the balancing test of *Pickering v. Bd. of Edu. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968). *See McGee*, 471 F.3d at 920.[4]

An examination of the content, form, and context of plaintiffs' July 2012 letters and Barnes' hearing testimony shows both Barnes' and Powell's speech to address personnel matters at the police department that were relevant only to their

---

[4] *Pickering* requires the Court to balance the public employee's interest in speaking against his employer's interest in promoting the efficiency of the public service it performs through its employees. *Lindsey v. City of Orrick, Mo.*, 491 F.3d 892, 900 (8th Cir. 2007). To trigger this balancing test, the public employer must demonstrate that the speech at issue created workplace disharmony, impeded the plaintiff's performance, or impaired working relationships. *Id.* Here, defendants offer a *Pickering* and related qualified immunity analysis as an alternative ground for summary judgment in the event plaintiffs' speech is determined to be protected under the First Amendment. Because plaintiffs' speech is not so protected, I need not address this alternative argument.

employment as police officers. Because they did not speak as citizens on matters of public concern, the speech at issue was not protected speech within the meaning of the First Amendment.

July 2012 Letters – "Votes of No Confidence"

1.  *Content*

The content of plaintiffs' July 2012 letters speaks only to matters affecting plaintiffs' employment, offering concerns regarding Fanara's ability to supervise and manage police personnel, and specifically, themselves; as well as how Fanara's supervision methods affect the department's work environment and the ability of the officers to perform their duties. The letters conclude with a request that Fanara be relieved of his supervisory role over *them* and that a new person be appointed to supervise *them* and manage the department. This speech amounts to nothing more than complaints and observations regarding personnel matters, which generally are deemed not to address matters of public concern. *See Belk v. City of Eldon*, 228 F.3d 872, 879 (8th Cir. 2000). "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420 (quoting *Connick*, 461 U.S. at 154). "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of

a constitutional case." *Connick*, 461 U.S. at 149.

To the extent Barnes' letter briefly refers to his concern that Fanara's lack of ability was a safety issue affecting the City, a reading of the letter in its entirety shows its primary purpose was to further Barnes' own employment interest. While "public safety issues are obvious examples of matters that are of concern to the general public," *McGee*, 471 F.3d at 920, I must focus on Barnes' role in advancing this expression in determining whether his speech is entitled to First Amendment protection. *Bailey v. Dep't of Elementary & Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006). In other words, did Barnes act as "'a concerned public citizen, informing the public that the state institution is not properly discharging its duties . . . ; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution[?]'" *Id.* (quoting *Cox*, 790 F.2d at 672).

> When the employee's speech includes matters of both public concern and personal interest, we must analyze the content, form, and context of the speech to determine whether the speaker was acting *primarily* as a concerned citizen or as an employee. If the speech was *mostly intended* to further the employee's private interests rather than to raise issues of public concern, [his] speech is not protected, even if the public might have an interest in the topic of [his] speech.

*Id.* (emphasis added) (citation omitted). *See also McCullough*, 559 F.3d at 866 (court must look to employee's "primary interest" in making speech and whether speech is "primarily motivated" by public concern). Where a public employee

raises an issue of public concern solely to further his employment interest, "his First Amendment right to comment on that issue is entitled to little weight." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993) (citing *Connick*, 461 U.S. at 154).

While Barnes tangentially referred to the safety of the City in his letter, the letter's primary focus was Barnes' perception of Fanara's ability to supervise him and manage personnel within the police department. Barnes' vague and limited reference to the safety of the City is insufficient to overcome the primary purpose of the letter, that is, Barnes' concerns with internal practices relevant only to the employees of the police department. *See Bailey*, 451 F.3d at 520.

2. *Form*

The form of the speech likewise shows plaintiffs to have acted in their capacities as public employees in making it.

In their letters' introductions, Barnes and Powell identified their role as police officers and advised that their statements were to be considered "official and formal notice" of their lack of confidence in Fanara's role as supervisor. The letters were addressed to "the Mayor and Board of Alderman [sic] of the City of Charlack" and were delivered only to the mayor. Upon Barnes' request, the mayor made the letter available only to the members of the Board. No other form of publication was made. While the nature of the audience is not dispositive of

this First Amendment issue, *see Garcetti*, 547 U.S. at 420, it is significant that the speech was directed only to the mayor and the Board and only in their capacity as decision makers regarding Fanara's supervisory role over plaintiffs as police officers. *Cf. Buazard v. Meridith*, 172 F.3d 546, 549 (8th Cir. 1999) (internal nature of speech is a factor to be considered).

    3.    *Context*

Finally, I must review the context in which plaintiffs made this speech. The circumstances giving rise to plaintiffs' speech arose out of employment decisions made by the Board regarding the position of acting chief of police. The letters were written only two weeks after the Board named Fanara as acting chief and during the pendency of emergency litigation relating to the mayor's proposed reinstatement of Umberito as interim chief. The statements in the letters were made only to the mayor and the Board and were characterized by plaintiffs themselves as "official" and made in their capacity as police officers. Taken together, the internal nature of the statements, plaintiffs' self-identified role as employees in making their statements, and the timing of the employment-related decisions that gave rise to the statements demonstrate that plaintiffs' speech was not a matter of public concern but rather was made in the context of their employment interests. *See Buazard*, 172 F.3d at 549.

Because plaintiffs were not acting as citizens speaking on matters of public

concern in their July 2012 letters, the speech contained in the letters did not constitute protected speech under the First Amendment. Defendants are therefore entitled to summary judgment on plaintiffs' First Amendment retaliation claims as they relate to the July 2012 letters.

July 2012 Hearing Testimony

The same holds true for Barnes' testimony given on July 31, 2012, at the hearing on the City's motion for temporary restraining order.

The content of Barnes' testimony addressed only internal personnel issues that involved staffing, micro-management, record keeping, and provisions for officers. None of these matters involved issues of public concern. The testimony was given in the context of an employment dispute regarding the authority to appoint an interim chief of police. In addition, Barnes testified pursuant to subpoena in his capacity as a police officer. Barnes did not appear in court to testify as a private citizen, nor did he publicize the content of his testimony beyond the official record.

A review of the record in its entirety shows that Barnes' testimony addressed personnel matters that were relevant only to the internal operation of the police department. Because his testimony was not given as a citizen on matters of public concern, the speech at issue was not protected speech within the meaning of the First Amendment.

Defendants are therefore entitled to summary judgment on plaintiffs' claim that defendants terminated their employment in retaliation for their exercise of protected speech.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [26] is **GRANTED.**

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of April, 2016.